IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

JOHN ANTHONY CASTRO,

                              Plaintiff,

v.                                                                                  No. 1:23-cv-00416-JL-TSM

SECRETARY OF STATE DAVID SCANLAN and
DONALD JOHN TRUMP,

                              Defendants.

**RESPONSE TO EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND EXPEDITED PRELIMINARY INJUNCTION HEARING CONSOLIDATED WITH A PRELIMINARY BENCH TRIAL ON THE MERITS**

      Plaintiff has filed an Emergency Application for a Temporary Restraining Order and Expedited Preliminary Injunction Hearing Consolidated with a Preliminary Bench Trial on the Merits ("Emergency Application"), seeking *inter alia,* issuance of a temporary restraining order without a hearing and without having properly served Defendant Donald John Trump. The Court should deny all requested relief in the Emergency Application.

      As an initial matter, Plaintiff's motion is an abuse of this Court's emergency procedures that is transparently intended to evade the obligations to serve a summons and complaint imposed on all litigants by the Federal Rules of Civil Procedure. Rather than serving President Trump, Plaintiff—who blatantly holds himself out to the public as a lawyer even though no jurisdiction has admitted him to its bar and at least one state bar (Florida's) told him to stop doing so in 2016[1] (only to be ignored)—ginned up a false "emergency," emailed counsel for

---

[1] *See* https://www.castroandco.com/staff-profiles/john-anthony-castro-j-d-ll-m/ (Plaintiff's "law firm" biography, containing his convoluted explanation of why he believes he is allowed to

President Trump in a different case seeking similar relief with regard to the Florida ballot (which Plaintiff lost, is currently appealing to the Eleventh Circuit, and in connection with which has so far filed *three* mandamus petitions with no success), and insisted that this constitutes sufficient notice under Rule 65 such that he should be relieved of the ordinary service obligations that other litigants must fulfill. And this is just the first of what is now at least five cases[2] in which he has tried the same end run around his obligations under the federal rules and President Trump's rights under those rules.[3] This Court need not, and should not, countenance such misuse of its emergency procedures and flouting of its rules. To the contrary, this Court both can and should deliver a clear message that litigants—especially litigants who claim to be lawyers—must obey those rules. The Court would be well within its rights under its inherent power to control its own docket and proceedings before it to deny Plaintiff's emergency motion for this abuse alone or to impose a substantial monetary sanction upon him.[4]

In any event, Plaintiff is not likely to succeed on the merits and his application for a temporary restraining order should be denied. Given the short time that Plaintiff's flouting of the

---

practice law even though he has never been admitted to any bar); Exhibit 1, July 18, 2016 Letter from the Unauthorized Practice of Law Committee of the Florida Bar to John Anthony Castro).

[2] *Castro v. Trump*, N.D.TX, 4-23cv-556, motion for default judgment without serving the complaint in accordance with Rule 4 (Doc. #16 &18); *Castro v. Aguilar*, NV Dist., 2:23-cv-01387, application for temporary restraining order filed on Sept. 18, 2023 (Doc. #11); *Castro v. Jacobsen*, MT Dist., 6:23-cv-00062, application for temporary restraining order filed on Sept. 18, 2023 (Doc. #7); and *Castro v.* Fontes, AZ Dist., 2:23-cv-01865, application for temporary restraining order filed on Sept. 18, 2023 and denied the same date (Doc. #11-12).

[3] Exhibit 2 (emails from Plaintiff to Jesse Binnall, acknowledging that Mr. Binnall does not represent President Trump in the relevant matters but declaring that sending him emails advising of his intent to file a TRO satisfies his notice obligations under Rule 65).

[4] *See, e.g., Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este*, 456 F.3d 272, 275 (1st Cir. 2006) (holding that it is "a bedrock proposition that federal courts possess wide-ranging power to sanction parties" for non-compliance with court-imposed rules and that sanctions imposed pursuant to that power are reviewable only for abuse of discretion).

rules has made available to him, Defendant only briefly addresses the major flaws that bar Plaintiff's request for a Temporary Restraining Order in this brief. He will address them more comprehensively in opposing Plaintiff's motion for a Preliminary Injunction on the schedule set by the Court.

### Standard for a Temporary Restraining Order

A temporary restraining order is "an extraordinary and drastic remedy that is never awarded as of right…." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (citation omitted).  Such an order is appropriate only when conditions exist which pose a threat of an "immediate and irreparable injury, loss, or damage" to the applicant if the conduct of the opposing party is not restrained until a hearing can be held on an application for preliminary injunction. *See* Fed. R. Civ. P. 65(b). The requirements of Rule 65(b) are "stringent" and "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

To obtain a temporary restraining order, in addition to showing an extraordinary emergency, a plaintiff "must establish that he is likely to succeed on the merits of his claim, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "To demonstrate likelihood of success on the merits, [the party] must show more than mere possibility of success — rather, [he] must establish a strong likelihood that [he] will

ultimately prevail." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012).

"[T]he first two factors, likelihood of success and irreparable harm, [are] 'the most important' in the calculus," *id.* (quoting *González-Droz v. González-Colón*, 573 F.3d 75, 79 (1st Cir. 2009)), and "the second factor, irreparable harm, is an 'essential prerequisite for equitable relief,'" *Potts NH RE, LLC v. Northgate Classics, LLC*, No. 12-cv-82-SM, 2012 WL 1964554, at *3 (D.N.H. May 10, 2012) (quoting *Braintree Labs., Inc. v. Citigroup Global Mkts. Inc.*, 622 F.3d 36, 41 (1st Cir. 2010)), R. & R. adopted by 2012 WL 1969051 (May 30, 2012).

Here, Plaintiff stumbles at every hurdle. He cannot show: that there is an emergency justifying the extraordinary relief he demands, that he is likely to succeed on the merits of his claim, that he will suffer irreparable harm if relief is not granted, that the balance of equities tips in his favor, or that an injunction would be in the public interest. Accordingly, this Court should deny his motion for a temporary restraining order.

## Plaintiff's History of Abusive Litigation

Defendant is aware of at least 16 similar lawsuits filed by this Plaintiff based on the same meritless arguments.[5] All of these complaints are similar to this case in that Plaintiff seeks to

---

[5] *Castro v. F.E.C.*, D.C. Dist., 1:22-cv-02176 (Filed on July 25, 2022); *Castro v. Trump*, S.D.FL, 9:23-cv-80015 (Filed on Jan. 6, 2023); *Castro v. Scanlan*, Merrimack Superior Ct. NH, 217-2023-CV-00462 (filed on Aug. 27, 2023); *Castro v. Scanlan*, NH Dist., 1:23-cv-00416 (filed on Sept. 5, 2023); *Castro v. Fontes*, AZ Dist., 2:23-cv-01865 (filed on Sept. 5, 2023); *Castro v. Bellows*, ME Dist., 1:23-cv-00335 (Filed on Sept. 5, 2023); *Castro v. Aguilar*, NV Dist., 2:23-cv-01387 (filed on Sept. 5, 2023); *Castro v. Henderson*, UT Dist., 2:23-cv-00617 (filed on Sept. 6, 2023); *Castro v. Schmidt*, M.D.PA, 1:23-cv-01468 (filed on Sept. 6, 2023); *Castro v. Ziriax*, W.D.OK, 5:23-cv-00781 (filed on Sept. 6, 2023); *Castro v. Schwab*, KS Dist., 6:23-cv-01184 (filed on Sept. 7, 2023); *Castro v. McGrane*, ID Dist., 1:23-cv-00393 (filed on Sept. 7, 2023); *Castro v. Bell*, E.D.NC, 5:23-cv-00496 (filed on Sept. 7, 2023); *Castro v. Knapp*, SC Dist., 3:23-cv-04501 (filed on Sept. 7, 2023); *Castro v. Warner*, S.D.WV, 2:23-cv-00598 (filed on Sept. 7,

invoke judicial authority to remove Donald Trump from the ballot under Section 3 of the Fourteenth Amendment. Plaintiff first filed a lawsuit against the F.E.C. requesting the D.C. District Court to require the F.E.C. to refuse to accept Trump's Statement of Candidacy because he was not eligible under Section 3 of the 14th Amendment. *Castro v. F.E.C.*, D.D.C. 1:22-cv-02176, Doc. #1 filed on July 25, 2022. The District Court dismissed the case finding that Castro did not have standing and the court did not have subject matter jurisdiction. *Castro v. F.E.C.*, D.C. DC, 1:22-cv-02176, Doc. #21 filed on Dec. 6, 2022. The D.C. Circuit affirmed. *Castro v. F.E.C.*, D.C. Cir. No. 22-5323 (April 10, 2023).

Plaintiff then filed a lawsuit asking the Southern District of Florida to find that Trump provided aid and comfort to an insurrectionist and to declare him ineligible to hold any public office in the U.S. *Castro v. Trump*, S.D. FL, 9:23-cv-80015, Doc. #1 filed on Jan. 6, 2023. The district court dismissed the case. *Castro v. Trump*, S.D. FL, 9:23-cv-80015, Doc. #33 filed on June 23, 2023. Castro has filed three unsuccessful writs of mandamus and an appeal challenging the district court's actions[6] and has filed a writ of certiorari before judgment to the United States Supreme Court.[7]

A similar claim filed by different plaintiffs, seeking similar relief, was dismissed *sua sponte* by Judge Rosenberg in the United States District Court for the Southern District of

---

2023); *Castro v. Oliver*, NM Dist., 1:23-cv-00766 (filed on Sept. 8, 2023); and *Castro v. Jacobsen*, MT Dist., 6:23-cv-00062 (filed on Sept. 11, 2023).

[6] Writ of Mandamus because the court did not allow him to use the ECF system, 11th Cir., #23-10429, filed on Feb. 10, 2023. Denied on April 11, 2023. Writ of Mandamus to disqualify Judge Cannon, 11th Cir. #23-10531, filed on Feb. 23, 2023. Denied on May, 3, 2023. Writ of Mandamus to compel the district court to rule on the merits pending the motion to dismiss, 11th Cir., #23-11837, filed on June 5, 2023. Denied as moot on Aug. 23, 2023. Notice of Appeal, 11th Cir. #23-12111, filed on June 26, 2023. Pending.

[7] Case No. 23-117, Distributed for Conference of Sept. 26, 2023.

Florida. In No. 23-CV-61628-ROSENBERG, Plaintiffs Lawrence A. Caplan, Barry Butin, and Michael Strianese sued President Trump on August 24, 2023. The Court concluded there that it lacked subject matter jurisdiction and dismissed the Complaint.

In addition to the plethora of cases filed in district courts around the nation over the last two weeks, plaintiff has also filed an almost identical case in Merrimack Superior Court, seeking the same ultimate relief he seeks here. *See* Exhibit 3 (Merr. Supp. Ct. Complaint, John Anthony Castro v. Donald John Trump, et al., Case No. 217-2023-cv-00462). That complaint has not been served on President Trump and according to Assistant Attorney General Brendan O'Donnell had not been served or on Secretary of State David Scanlan as of this morning, September 19.

**Plaintiff's Claim for Irreparable Competitive Injuries is without Merit**

Here, Plaintiff claims he is suffering "irreparable competitive injuries" because Trump is "siphoning off votes and contributions…putting Plaintiff at both a voter and donor disadvantage." *See* Emergency Application at 7. This assertion ignores some basic and undeniable facts and rests entirely on impermissible speculation.

In New Hampshire, a presidential candidate is required to file a declaration of candidacy between the first Monday in November and the third Friday in November unless the Secretary of State designates different dates. N.H. Rev. Stat. § 655:47.[8] As of September 13, 2023, the Secretary of State has announced different dates—the filing period will begin on October 11, 2023, and will run to October 27.

---

[8] N.H. Rev. Stat. § 653.9 provides that the "presidential primary election shall be held on the second Tuesday in March or on a date selected by the Secretary of State which is 7 or more days immediately preceding the date on which any other state shall hold a similar election, whichever is earlier…."

Plaintiff is not suffering any "siphoning of votes" away from him for the simple reason that no votes are presently being cast. Indeed, not only are no votes being cast, but there are not yet any candidates in the New Hampshire primary to vote for. As Plaintiff admits in his Emergency Application, "[o]n September 13, 2023, the New Hampshire Secretary of State announced the filing period for the 2024 Presidential Primary will begin October 11, 2023, and end on October 27, 2023." *See* Emergency Application at 6. And the Secretary of State has not established the date on which the primary will be held, either. Plaintiff makes no effort to explain how he can be losing votes in an election in which no candidates have declared their intention to run under New Hampshire law, and for which no date has been selected.

Even more confusingly, Plaintiff's Emergency Application states, "notice is not required because Defendant Donald John Trump cannot even submit his ballot access document until October 11, 2023." *See* Emergency Application at 6. In effect, he seems to be simultaneously arguing that: (1) Trump does not need to be served in this action until he formally becomes a candidate under New Hampshire law; and (2) Trump's candidacy is injuring Plaintiff by siphoning off votes, even though neither Castro's candidacy nor President Trump's can yet be formally announced under New Hampshire law. These two assertions conflict with each other and demonstrate the lack of merit of Plaintiff's claim. They also underscore that there is absolutely no emergency justifying the extraordinary remedy of a TRO, much less a TRO proceeding commenced without proper service under the rules.

Beyond this, Plaintiff's claim rests entirely on his baseless speculation—unsupported by any evidence indicating its likely truth—that but for President Trump's presence in the campaign, votes and donations would flow to him as opposed to candidates whom people have actually heard of.  To put it charitably, Plaintiff has never won an election, has no support in any

poll, and has been endorsed by no one. Plaintiff's obscurity is not relative and attributable to President Trump—it is absolute. The reason he will get no votes and no contributions—no matter who is running—is that no one has ever heard of him. Certainly, he has offered no evidence, as opposed to speculation untethered to reality, to support his claim to the contrary.

Plaintiff's request for injunctive relief is obviously meritless, but even if the Court were to look past the glaring problems that undermine the supposed "emergency" aspect of Plaintiff's Emergency Application, it still should decline to grant Plaintiff the relief he seeks. Plaintiff is unlikely to prevail on the merits of his claim for several reasons. First, the ability to determine presidential qualifications rests ultimately with a joint session of Congress, not New Hampshire state elections officials. Second, courts are without power to judge these issues as they present political questions. Third, the Fourteenth Amendment is not self-executing in this context, and Congress has passed no law authorizing individuals such as Plaintiff to assert the disqualification provisions in Section 3. And fourth, the complaint fails to adequately allege a violation of Section 3 of the Fourteenth Amendment. Thus, for all these reasons, he is unlikely to prevail on the merits and his Emergency Application should be rejected.

### The Ability to Determine Presidential Qualifications Rests with a Joint Session of Congress, Not State Elections Officials.

Surrounding the 2008 and 2012 General Elections, numerous lawsuits were filed asking state elections officials to ensure the qualifications of Barack Obama and/or John McCain or to challenge them outright. The Third Circuit, in an order issued during one such challenge, stated that this was a political question not within the province of the judiciary. *See Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009) ("We also denied that motion, reiterating Berg's apparent lack of

standing and also stating that Berg's lawsuit seemed to present a non-justiciable political question.").

Multiple district courts have also ruled that lawsuits by citizens challenging presidential qualifications presented non-justiciable political questions. *See e.g., Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1147 (N.D. Cal. 2008); *Barnett v. Obama*, No. SACV09-0082 DOC(ANX), 2009 WL 3861788, at *11 (C.D. Cal. Oct. 29, 2009); *Kerchner v. Obama*, 669 F. Supp. 2d 477, 483 n.5 (D.N.J. 2009) (rejecting challenge to President Obama's qualifications because, among other things, various constitutional provisions clearly vest responsibility for determination of the issue in the Electoral College and Congress, rendering it a non-justiciable political question; "None of these provisions evince an intention for judicial reviewability of these political choices."); *Grinols v. Electoral College*, 2013 WL 2294885, *7 (E.D. Cal. May 23, 2013) ("These various articles and amendments of the Constitution make clear that the Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President— is a political question that the Court may not answer."); and *Taitz v. Democrat Party of Mississippi*, 2015 WL 11017373, *16 (S.D. Miss. Mar. 31, 2015) ("Likewise, this court can find no authority in the Constitution which would permit it to determine that a sitting president is unqualified for office or a president-elect is unqualified to take office. These prerogatives are firmly committed to the legislative branch of our government."). The federal courts' refusal to interfere with the nonjusticiable political question of presidential qualifications was recently reaffirmed in the context of a to weigh in on whether Vice President Harris was a natural born citizen. *Const. Ass'n Inc. by Rombach v. Harris*, 2021 WL 4442870, at *3 (S.D. Cal., Sept. 28,

2021), aff'd, 2023 WL 418639 (9th Cir., Jan. 26, 2023) ("Were the Court to grant the declaratory relief requested by Plaintiffs, it would necessarily interfere in a political matter that is principally within the dominion of another branch of government. Because federal courts are barred form intruding on a task constitutionally assigned to Congress, this action presents a non-judiciable political question that this Court cannot consider, and, thus, the court lacks jurisdiction over this case.")

The Constitution and federal statutes, passed by Congress, speak to the manner in which the President shall be elected. *Bowen*, 567 F. Supp. at 1146-47. In *Bowen*, the court held that "mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to any candidate to be ventilated when electoral votes are counted." *Id*. at 1147. And that "the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify." *Id*. Specifically, the manner of counting the electoral college votes is delineated by federal statute. *See e.g.*, 3 U.S.C. § 15. Moreover, the Twentieth Amendment provides that:

> if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be elected, and such person shall act accordingly until a President or Vice President shall have qualified.

U.S. CONST., amend. XX.

These amendments to the United States Constitution and federal laws passed by Congress are "quintessentially suited" to determine "[i]ssues regarding qualifications for president." *Bowen,* 567 F. Supp. 2d. at 1147. Indeed, the *Bowen* court went so far as to hold that "this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review—if any—should occur

only after the electoral and Congressional processes have run their course." *Id.* (citing *Texas v. United States,* 523 U.S. 296, 300–02 (1998)).

Moreover, "[t]he Twenty–Fifth Amendment, which addresses the succession to presidency and vice presidency in the case the president is disabled ... directs that in the case where there is disagreement as to whether the President is able to discharge the powers and duties of his or her office, 'Congress shall decide the issue.'" *Barnett v. Obama*, No. SACV09-0082 DOC(ANX), 2009 WL 3861788, at *14 (C.D. Cal. Oct. 29, 2009), *order clarified,* No. SA CV 09-0082 DOC, 2009 WL 8557250 (C.D. Cal. Dec. 16, 2009), and *aff'd sub nom. Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011). Indeed, "the Twenty–Fifth Amendment sets forth the line of succession 'in case of the removal of the president from office' or in case of his or her death, resignation, or inability to serve. The Amendment specifies a role for Congress in this process, but no role for the judiciary." *Id.* at *15.

Nowhere does the New Hampshire legislature require the Secretary of State to determine the qualifications of candidates. That makes sense because allowing individual state elections officials from more than 50 jurisdictions across the country to usurp Congress's role in determining presidential qualifications would sow unprecedented confusion and uncertainty.

If Congress wanted states to play a part in determining the qualifications for president, it would have said so. It didn't. And in the absence of a delegation of express power to state elections officials to judge a presidential candidate's qualifications, and a clear process by which to do so, the result would be chaos. The California Court of Appeals' language in *Keyes v. Bowen*, 189 Cal.App.4th 647 (2010), is instructive:

> In any event, the truly absurd result would be to require each state's election official to investigate and determine whether the proffered candidate met eligibility criteria of the United States Constitution, giving each the power to override a party's selection of a presidential candidate. The presidential nominating process is not

11

> subject to each of the 50 states' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results. Were the courts of 50 states at liberty to issue injunctions restricting certification of duly-elected presidential electors, the result could be conflicting rulings and delayed transition of power in derogation of statutory and constitutional deadlines. Any investigation of eligibility is best left to each party, which presumably will conduct the appropriate background check or risk that its nominee's election will be derailed by an objection in Congress, which is authorized to entertain and resolve the validity of objections following the submission of the electoral votes.

*Id.* at 660. New Hampshire's laws, like the laws of the rest of the states, do not, nor can they, allow for state election officials to determine if a presidential candidate has violated the Fourteenth Amendment. This Court should reject the Plaintiff's request.

**Plaintiff is Unlikely To Prevail Because The Fourteenth Amendment Is Not Self-Executing When Used Offensively, And Congress Has Not Passed A Statute Authorizing Plaintiff To Bring This Claim.**

Even if this Court had jurisdiction, and even if judicial action were not barred by justiciability concerns, the Fourteenth Amendment still is not self-executing and cannot be applied to support a cause of action seeking judicial relief absent enactment by Congress of a statute authorizing such action. A recent article by scholars Joshua Blackman and Seth Barrett Tillman summarizes the question of whether the Fourteenth Amendment is self-executing as follows:

> In our American constitutional tradition there are two distinct senses of self-execution. First, as a *shield*—or a *defense*. And second, as a *sword*—or *a theory of liability or cause of action supporting affirmative relief.* The former is customarily asserted as a defense in an action brought by others; the latter is asserted offensively by an applicant seeking affirmative relief.
>
> For example, when the government sues or prosecutes a person, the defendant can argue that the Constitution prohibits the government's action. In other words, the Constitution is raised *defensively*. In this first sense, the Constitution does not require any further legislation or action by Congress. In these circumstances, the Constitution is, as Baude and Paulsen write, self-executing."
>
> In the second sense, the Constitution is used *offensively*‑*as a cause of action supporting affirmative relief.* For example, a person goes to court, and sues the

12

> government or its officers for damages in relation to a breach of contract or in response to a constitutional tort committed by government actors. As a general matter, to sue the federal government or its officers, a private individual litigant must invoke a federal statutory cause of action. It is not enough to merely allege some unconstitutional state action in the abstract. Section 1983, including its statutory antecedents, i.e., Second Enforcement Act a/k/a Ku Klux Klan Act of 1871, is the primary modern statute that private individuals use to vindicate constitutional rights when suing state government officers.
>
> Constitutional provisions are not automatically self-executing when used offensively by an applicant seeking affirmative relief. Nor is there any presumption that constitutional provisions are self-executing.

Blackman and Tillman, *Sweeping and Forcing the President Into Section3: A Response to William Baude and Michael Stokes Paulsen*, last visited September 18, 2023, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4568771 (emphasis in original; internal footnote omitted). Blackman and Tillman then thoroughly analyze whether Section 3 of the 14th Amendment is self-executing and explain at length why it is not.

Among the arguments they analyze is the historical treatment of the issue by, among others, Chief Justice Chase and the Congress of 1870, just two years after the 1868 ratification of the Fourteenth Amendment. One year after ratification, the Chief Justice of the Supreme Court of the United States, in a circuit court case, ruled that the Fourteenth Amendment was not self-executing. *See In re Griffin*, 11 F.Cas. 7 (C.C.Va 1869). In 1870, presumably in response to *In re Griffin*, Congress passed a law, entitled the "Enforcement Act," which allowed federal district attorneys to enforce the Fourteenth Amendment. But the Enforcement Act did not give *state* election officials the authority to enforce the Fourteenth Amendment; it gave *federal* district attorneys that authority. And in 1925, the Enforcement Act was repealed. In 2021, legislation was introduced to provide a cause of action to remove individuals from office who were engaged in insurrection or rebellion, but no further action was taken on that bill. *See* H.R. 1405, 117th Cong. 2021. Chief Justice Chase's

order and the subsequent legislative history shows that the Fourteenth Amendment is not self-executing and that it does not give secretaries of state the authority to remove a presidential candidate from the ballot for violations of Section Three of the Fourteenth Amendment.

### Plaintiff Is Unlikely To Prevail Because He Has Not Alleged That Trump Violated Any Provision of Section 3 Of The Fourteenth Amendment.

Assuming Plaintiff's' pleadings to be true and construing all reasonable inferences in the light most favorable to him, the Complaint on its face does not assert a cause of action. The sole legal basis in the Complaint for the requested relief is the allegation that President Trump provided "aid and comfort" to "insurrectionists."

It is matter of public record that Donald Trump was impeached by the 117th Congress for incitement of insurrection and that he was found ***not guilty*** of those charges by the Senate. *See* Impeaching Donald John Trump, President of the United States, for high crimes and misdemeanors, H. 24, 117th Cong. (2021).[9] Even if all the facts in the Complaint are true, rebellion or insurrection is a federal crime, and no court in the United States has found Trump guilty of 18 U.S.C. § 2383. Furthermore, not a single prosecutor has filed an indictment against Trump for the rebellion or insurrection, much less obtained a conviction on such a charge.

Plaintiff's entire case is based upon the argument that Trump somehow provided aid and comfort to an insurrection. The plain text of Sec. 3 of the 14th Amendment prohibits the holding of office by someone who "engaged in insurrection or rebellion" or who has "given aid or comfort to the enemies" of the United States. Even if Plaintiff's theory that a President could be prohibited from holding office for giving aid to an insurrectionist were correct, not one of the

---

[9] A true and correct copy of the Senate vote of Not Guilty can be found at https://www.senate.gov/legislative/LIS/roll_call_votes/vote1171/vote_117_1_00059.htm (last visited on June 19, 2023).

1,000+ people charged in connection with the riot at the Capitol on January 6th has yet even been charged—much less convicted—under 18 U.S.C. § 2383, the federal criminal statute that covers "insurrection." *United States v. Griffith*, 2023 WL 2043223, *6 fn. 5 (D. DC, Feb. 16, 2023) (finding that "no defendant has been charged with [18 U.S.C. § 2383]"); Alan Feuer, *More Than 1,000 People Have Been Charged in Connection with the Jan. 6 Attack,* New York Times (Aug. 1, 2023).

Accordingly, even taking the facts in the Complaint as true—which, of course, this Court is not constrained to do on a motion for Temporary Restraining Order with respect to which Plaintiff must support with actual proof[10]—the Fourteenth Amendment does not disqualify President Trump from being President again should the American people choose to elect him.

This highlights two of the other deficiencies in Plaintiff's motion. First, the balance of equities does not tilt in Plaintiff's favor. Rather, the balance of equities plainly favors President Trump when one weighs Plaintiff's highly speculative—and frankly absurd—conjecture that votes and contributions would flood to him if only President Trump were not on the ballot, against the harm that would be done to President Trump by excluding him from the ballot, to the Republican party by limiting its choice of nominee, and to American voters by limiting their freedom to vote for the candidate of their choice. And second, the public interest weighs heavily against this Court—or any court—usurping Congress' exclusive power to determine qualification for the presidency and taking the issue out of the hands of American voters.

---

[10] *See, e.g., New Comm Wireless Serv., Inc. v. Sprintcom, Inc.*, 287 F.3d 1, 9-13 (1st Cir. 2002) (reversing grant of preliminary injunction as an abuse of discretion because "the magistrate judge's determination that Sprint would likely be found to have acted in bad faith *lacks an adequate evidentiary predicate* (and therefore is clearly erroneous)").

**Conclusion**

For the foregoing reasons, Plaintiff has failed to show that they are likely to succeed on the merits and thus the application for a temporary restraining order should be denied.

|  |  |
|---|---|
|  | Respectfully Submitted<br>Donald J. Trump<br>By his attorneys,<br>Lehmann Major List, PLLC |
|  |  |
| September 19, 2023 | */s/Richard J. Lehmann*<br>_____<br>Richard J. Lehmann (Bar No. 9339)<br>6 Garvins Falls Road<br>Concord, N.H. 03301<br>(603) 731-5435<br>rick@nhlawyer.com |

CERTIFICATION

I hereby certify that a copy of this pleading was this day forwarded to opposing counsel via the court's electronic service system.

|  |  |
|---|---|
| September 19, 2023 | */s/Richard J. Lehmann*<br>_____<br>Richard J. Lehmann |