**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

```
*************************************
John Anthony Castro,                 *
                                     *
        Plaintiff,                   *
    v.                               *      Civil No. 1:23-cv-00416-JL
                                     *
Secretary of State David M. Scanlan, et al,  *
                                     *
        Defendants.                  *
                                     *
*************************************
```

**SECRETARY OF STATE'S OBJECTION TO**
**PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF**

The Defendant, New Hampshire Secretary of State David M. Scanlan (the "Secretary of State"), through his counsel, the New Hampshire Office of the Attorney General, hereby objects to the Plaintiff's request for injunctive relief against the Secretary of State. The Plaintiff lacks standing to maintain his action against the Secretary of State because the Plaintiff cannot prove that his alleged injury is traceable to the Secretary of State or redressable by the Plaintiff's requested relief. Therefore, the Secretary of State requests that this Honorable Court deny the Plaintiff's request for injunctive relief against the Secretary of State.

I.  **Introduction**:

1.    The Plaintiff, John Anthony Castro, brought this action against the Secretary of State and Donald Trump, seeking injunctive relief to compel the Secretary of State to not accept or process Mr. Trump's declaration of candidacy. See ECF 1, ¶16; ECF 6, ¶16. The Plaintiff asserts that Mr. Trump is disqualified from holding the office of the president pursuant to Section Three of the Fourteenth Amendment to the United States Constitution ("Section Three"). See ECF 1, ¶14; ECF 6, ¶14. The Plaintiff asserts that he is suffering a "concrete competitive injury" in the "form

of a diminution of votes and/or fundraising" by having to compete against an allegedly

disqualified candidate.  See ECF 1, ¶21-23; ECF 6, at 7.

2.      This Court should deny the Plaintiff's request for injunctive relief against the Secretary of

State because the Plaintiff lacks standing.  Specifically, the Plaintiff's claimed injury—the loss

of primary votes and campaign donations—is not traceable to or caused by the Secretary of

State's statutory obligations regarding presidential primary declarations of candidacy under RSA

655:47.  Nor will the Plaintiff's requested relief redress his claimed injury, where even the

Plaintiff acknowledges that an order requiring the Secretary of State to keep Mr. Trump's name

off this State's presidential primary ballot will not prevent Mr. Trump from campaigning and

fundraising in this State and across the country for the Republican National Committee's

("RNC") nomination as the party's candidate for the office of the president.  ECF 1, ¶7

(acknowledging that "ballot placement is not legally determinative" as to whether a candidate is

qualified to hold office because this State "permits write-in candidates and their votes to be

counted").

3.      Viewing the Plaintiff's pleadings as a whole, it appears that the Plaintiff is really seeking

an opportunity to litigate the merits of whether Mr. Trump is disqualified from holding the office

of the president under Section Three, and an injunction requiring Mr. Trump not to file a

declaration of candidacy or to withdraw his candidacy.  In other words, as pled in the Plaintiff's

Complaint, although the Plaintiff's alleged injuries may be traceable to Mr. Trump's actions,

those injuries are not directly caused by the Secretary of State fulfilling his statutory duty to

place the name of a candidate on this State's presidential primary ballot if that person timely files

a declaration of candidacy in the form required by RSA 655:47, I, and pays the filing fee

required by RSA 655:48.

II. **Background**:

    A.  <u>The Plaintiff's allegations that Section Three disqualifies Mr. Trump from holding the office of the president</u>:

4.      The Plaintiff alleges that he and Mr. Trump are both Republican primary presidential candidates.  ECF 1, ¶¶2, 4.

5.      The Plaintiff alleges that Section Three "creates an implied cause of action for a fellow candidate to obtain relief for a political competitive injury by challenging another candidate's constitutional eligibility on the grounds that they engaged in or provided 'aid or comfort' to an insurrection."  ECF 1, ¶8.

6.      The Plaintiff alleges that Mr. Trump "provided aid or comfort" to persons who participated in an "insurrection" on January 6, 2021, including Enrique Tarrio, who "was convicted of Seditious Conspiracy."  ECF 1, ¶¶9-14. <u>But see</u>  ECF 10, at 14 (Mr. Trump's response to the Plaintiff's motion for a temporary restraining order, in which Mr. Trump argues that: (i) he was impeached by the 117th Congress for incitement of insurrection but found not guilty of those charges by the Senate; (ii) he has not been indicted or convicted of rebellion or insurrection under 18 U.S.C. §2383; and (iii) none of the pending federal and state indictments against Mr. Trump are for "rebellion or insurrection").

7.      The Plaintiff argues that, based on this alleged conduct, Section Three disqualifies Mr. Trump from holding the office of the president.

8.      The Plaintiff asserts that he is "already suffering" a "concrete competitive injury" in the "form of a diminution of votes and/or fundraising" because he is "competing against [Mr.] Trump" for the RNC's nomination as the party's candidate for the office of the president, despite Mr. Trump allegedly being disqualified from holding the office of the president.  ECF 1, ¶21-23; ECF 6, at 7 (alleging that "Plaintiff is already suffering irreparable competitive injuries because

Defendant Donald John Trump, who is constitutionally ineligible to hold office, is siphoning off votes and contributions," thereby "putting Plaintiff at both a voter and donor disadvantage").

9.      Similarly, the Plaintiff' recently argued in a pleading he filed with the 11th Circuit Court of Appeals that he is presently being harmed by MR. Trump's presidential candidacy, and that the Plaintiff's alleged injury of "diminution of votes" and "fundraising" is directly traceable to Mr. Trump.  See John Anthony Castro v. Donald J. Trump, 11th Cir., Docket No. 23-12111, ECF 7, at 8 (arguing in his July 14, 2023, brief that "Appellant Castro directly competes with Appellee Trump for the 2024 Republican nomination for the Presidency of the United States, Appellant Castro has a ripe injury-in-fact in the form of diminution of political support traceable to the alleged unconstitutional candidacy of Appellee Trump"); at 21, 26 (arguing that the Plaintiff "has been and presently is being harmed by Trump's action" and that "[i]t is undisputed that Castro's injury-in-fact is traceable to Trump").

10.      The Plaintiff seeks an injunction ordering the Secretary of State to not accept or process Mr. Trump's declaration of candidacy for this State's presidential primary election.  See ECF 1, ¶16; ECF 6, ¶16.

   B.  The Secretary of State's statutory obligations regarding declarations of
       candidacy for this State's presidential primary:

11.      RSA 655:47-48 sets forth how candidates may file declarations of candidacy to have their names placed on their party's presidential primary ballot in this State.  Specifically, a candidate must file a declaration of candidacy in an appropriate form with the Secretary of State within the prescribed filing period and pay a fee.  See RSA 655:47, I-II; RSA 655:48.  The candidate must state, "subject to the penalties of perjury," that "I am qualified to be a candidate for the president of the United States pursuant to article II, section 1, clause 4 of the United States Constitution." RSA 655:47, I.

12.     Upon receiving a declaration of candidacy that meets the requirements of RSA 655:47-

48, the Secretary of State must print the candidate's name on the presidential primary ballot.  See

RSA 655:47, I (providing that the "names of any persons to be voted upon as candidates for

president at the presidential primary shall be printed on the ballots upon the filing of declarations

of candidacy with the secretary of state in the following form and signed by the candidate").

13.     On September 13, 2023, the Attorney General issued public guidance to the Secretary of

State regarding his obligations and authority upon receipt of presidential primary declarations of

candidacy.  A copy of this guidance letter is attached as **Exhibit A**.  As relevant here, the

Attorney General stated that "RSA 655:47, I, does not afford the Secretary of State discretion to

withhold a candidate's name from the ballot on the grounds that the candidate may be

disqualified under Section Three when a candidate has not been convicted or otherwise

adjudicated guilty of conduct that would disqualify a candidate under Section Three." Ex. A at 2.

14.     The filing period for this State's presidential primary election runs from October 11,

2023, through October 27, 2023.  See Running for Office, New Hampshire Secretary of State,

available at https://www.sos.nh.gov/elections/running-office.

        III. **Argument**:

        A.  Standing:

15.     "No principle is more fundamental to the judiciary's proper role in our system of

government than the constitutional limitation of federal-court jurisdiction to actual cases or

controversies."  Massachusetts v. United States HHS, 923 F.3d 209, 221 (1st Cir. 2019) (brackets

omitted) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006)).  The Plaintiff, as

the party invoking federal jurisdiction, bears the burden of establishing that he has standing.  See

id.  The Plaintiff must demonstrate: (1) an injury in fact that is "concrete and particularized" and

"actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action"; and (3) that it is "likely that the injury will be redressed by a favorable decision." Id. at 221-22 (quotations and ellipsis omitted).  These three components of the Article III "case or controversy" requirement are designed to ensure that the plaintiff "has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976) (quotation omitted).

16.     The Plaintiff bears the burden of proving each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016) (quotation omitted).  At the Plaintiff's request, the Court has consolidated the preliminary injunction hearing with a bench trial on the merits. See ECF 24.  Therefore, the Plaintiff must prove his actual standing to obtain injunctive relief, and he cannot rely on unproven allegations. See NuVasive, Inc., v. Day, 954 F.3d 439, 443 (1st Cir. 2020) (plaintiff must prove "a substantial likelihood of success on the merits" to obtain preliminary injunctive relief (quotation omitted)); K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914-15 (1st Cir. 1999) (plaintiff must prove "actual success on the merits," rather than likelihood of success, to obtain permanent injunctive relief" (quotation omitted)).

            B.   The Plaintiff must prove that he has suffered an injury in fact:

17.     The Plaintiff must demonstrate that he has suffered an injury in fact that is concrete, particularized, and actual or imminent. See Massachusetts v. United States HHS, 923 F.3d at 221.  The Plaintiff alleges that he is suffering a "concrete competitive injury" in the "form of a diminution of votes and/or fundraising" by having to compete against Mr. Trump in this State's

presidential primary election.  ECF 1, ¶21-23; ECF 6, at 7.  To determine whether the Plaintiff

has proven a cognizable injury, the Court will have to resolve factual questions regarding the

Plaintiff's and Mr. Trump's campaigns and the actual effects that each party's campaign may

have on the other.

18.     The Secretary of State is responsible for overseeing elections in this State, including

presidential primary elections.  See generally RSA chapter 5; RSA chapter 655 (setting forth the

process for candidates declaring for this State's presidential primary election); RSA 656:1

(setting forth the Secretary of State's responsibilities for preparing voting materials).  As this

State's highest election official who must impartially oversee this State's elections, it would not

be appropriate for the Secretary of State to take a position regarding the injury that one partisan

candidate's campaign may be causing to another partisan candidate's campaign.  Similarly,

because RSA 655:47 does not provide the Secretary of State discretion to withhold a candidate's

name from the ballot on the grounds that the candidate may be disqualified under Section Three

when that candidate has not been convicted or otherwise adjudicated guilty of conduct that

would disqualify a candidate under Section Three, it would not be appropriate in the absence of

such conviction for the Secretary of State to take a position regarding the factual dispute as to

whether Mr. Trump is disqualified under Section Three.

19.     However, the Secretary of State notes that federal courts have an "independent obligation

to assure that standing exists, regardless of whether it is challenged by any of the parties."

Hernández-Gotay v. United States, 985 F.3d 71, 77 (1st Cir. 2021).  Therefore, the Plaintiff still

bears the burden of proving that he suffered a cognizable injury in fact, notwithstanding the

Secretary of State not taking a position on this element of the Plaintiff's standing.

C.   The Plaintiff cannot prove that his alleged injury is traceable to the Secretary of State:

20.     To demonstrate that he has standing, the Plaintiff must prove that his alleged injury is "fairly traceable to the challenged action," meaning that the defendant's actions directly caused the plaintiff's injury.  See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020) (explaining that the "traceability or causation element requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm" and noting that this connection "cannot be overly attenuated" (quotations omitted)).

21.     Here, the Plaintiff asserts that he will suffer a "concrete competitive injury" in the "form of a diminution of votes and/or fundraising" if the Secretary of State accepts a declaration of candidacy from Mr. Trump and places his name on this State's presidential primary ballot.  ECF 1, ¶22-23.  Considering the Plaintiff's specific allegations in the context of this State's statutory framework governing presidential primary elections, the Plaintiff cannot prove that the Secretary of State directly caused his alleged injury for several reasons.

22.     First, the Secretary of State's receipt of a presidential primary declaration of candidacy from one candidate has no impact on the ability of another candidate to file a declaration of candidacy.  The Plaintiff may timely file a presidential primary declaration of candidacy in accordance with RSA 655:47-48, regardless of whether Mr. Trump also files a presidential primary declaration of candidacy in this State.  Similarly, the Secretary of State's largely ministerial role in receiving presidential primary declarations of candidacy under RSA 655:47-48 does not prevent the Plaintiff from campaigning for the RNC's nomination as the party's candidate for the office of the president.  Nor do the Secretary of State's statutory obligations regarding presidential primary elections prevent the Plaintiff from fundraising for his campaign.

Thus, the Secretary of State's statutory obligations with respect to another candidate filing a

presidential primary declaration of candidacy in this state do not in any way prevent the Plaintiff

from filing a presidential primary declaration of candidacy, campaigning for election, or

fundraising for his campaign.

23.     Second, the Plaintiff alleges that he is already being harmed, which belies his argument

that his injury is traceable to an act of the Secretary of State that has not yet occurred.  The

Plaintiff asserts that he is "presently being irreparably injured every day that Defendant Donald

John Trump is permitted to continue his unconstitutional candidacy."  ECF 6, at 7.  In pleadings

before the 11th Circuit, the Plaintiff similarly argued that the same alleged "injury-in-fact is

traceable to Trump."  John Anthony Castro v. Donald J. Trump, 11th Cir., Docket No. 23-12111,

ECF 7, at 26.  Notably, the filing period for this State's presidential primary election will not

open until October 11, 2023, and the Secretary of State has not yet received a declaration of

candidacy from Mr. Trump or placed his name on the presidential primary ballot.  Therefore, the

Plaintiff's asserted injury clearly cannot be directly caused by the Secretary of State where the

Plaintiff asserts that he is already being harmed despite the Secretary of State not having taken

the action the Plaintiff challenges.

24.     Third, the Plaintiff acknowledges that his alleged injury will continue even if Mr.

Trump's name is not placed on the presidential primary ballot. The Plaintiff admits

that "ballot placement is not legally determinative" as to whether a candidate is qualified to hold

office because this State "permits write-in candidates and their votes to be counted."[1]  ECF 1, ¶7.

In other words, the Plaintiff acknowledges that regardless of whether the Court orders the

Secretary of State to keep Mr. Trump's name off the presidential primary ballot, Mr. Trump

---

[1] See also John Anthony Castro v. Donald J. Trump, 11th Cir., Docket No. 23-12111, ECF 7, at 20 (Plaintiff arguing that "[b]allot access does not control the determination of whether an individual is a candidate" and that "[t]here are many examples of successful write-in candidacies by candidates who did not appear on the ballot.").

could continue to fundraise and campaign for the RNC's nomination to run as the party's

candidate for the presidential election.  Therefore, the Plaintiff's asserted injury cannot be

directly caused by the Secretary of State where the Plaintiff asserts he will continue to be injured

even if the Court grants his requested relief.  See Delta Constr. Co. v. EPA, 783 F.3d 1291,

1296-97 (D.C. Cir. 2015) (reasoning that plaintiffs did not have standing to challenge EPA

regulations because the plaintiff's alleged injury would have occurred even without the EPA's

regulations).

25.      Taken together, the Plaintiff is effectively alleging that Mr. Trump's campaign for the

RNC's nomination as its candidate for the 2024 presidential election harms the Plaintiff's own

campaign for the RNC's nomination.  In other words, the Plaintiff alleges that his harm is caused

by Mr. Trump's campaign—not by the Secretary of State receiving presidential primary

declarations of candidacy and placing the names of those candidates on this State's presidential

primary ballot.  See Dantzler, Inc., 958 F.3d at 47 ("Causation is absent if the injury stems from

the independent action of a third party." (cleaned up)); R&D Master Enters. v. Fin. Oversight &

Mgmt. Bd., 75 F.4th 41, 48 (1st Cir. 2023) (ruling that an alleged injury was not traceable to the

defendant because the injury was "indirect at best and relie[d] on the actions of third parties"

(quotation omitted)).  The Plaintiff's allegation that he has already been harmed despite the

Secretary of State not having taken any action, and the Plaintiff's acknowledgment that he will

continue to be harmed even if the Court orders the Secretary of State not to take the challenged

action, make it readily apparent that the Secretary of State is not directly causing the Plaintiff's

alleged harm.  See Dantzler, Inc., 958 F.3d at 47 (requiring plaintiffs to "show a sufficient direct

causal connection between the challenged action and the identified harm" (emphasis added)).

Accordingly, the Plaintiff lacks standing to maintain his action against the Secretary of State

because his alleged injury is not directly caused by the Secretary of State receiving presidential

primary declarations of candidacy and placing the names of those candidates on this State's

presidential primary ballot as required by RSA 655:57-48.

> D. The Plaintiff's requested relief would not redress the Plaintiff's claimed injury:

26.     To demonstrate standing, the Plaintiff must additionally prove that "a favorable

resolution of [his] claim would likely redress the professed injury." Dantzler, 958 F.3d at 47

(explaining that "it cannot be merely speculative that, if a court grants the requested relief, the

injury will be redressed").  The Plaintiff claims that he is injured by having to compete with Mr.

Trump for the RNC's nomination as its candidate for the 2024 presidential election, and he

requests the Court order the Secretary of State to not accept or process Mr. Trump's declaration

of candidacy.  See ECF 1, ¶¶16, 22-23.  However, the Plaintiff's requested relief would not

redress the Plaintiff's claimed injury.

27.     An order requiring the Secretary of State not to accept Mr. Trump's declaration of

candidacy will not prevent Mr. Trump from campaigning for the RNC's nomination as its

candidate for the 2024 presidential election.  Nor will such an order prevent Mr. Trump from

fundraising for his campaign.  Nor will such an order prevent Mr. Trump from receiving write-in

votes, winning this State's presidential primary election, or having his preferred delegates attend

the RNC's party convention and vote for his nomination as the party's presidential candidate.

See RSA 655:50-51; see also ECF 1, ¶7.  Nor will such an order prevent Mr. Trump from

competing for and winning pledges from RNC party convention delegates from other states.

28.     Taken together, the Plaintiff's requested relief will not redress his alleged injury in

having to compete against Mr. Trump for the RNC's nomination as the party's presidential

candidate because the Plaintiff alleges he is already being harmed and will continue to be harmed

regardless of whether the Secretary of State takes the challenged action.  See Novak v. United

States, 795 F.3d 1012, 1018-20 (9th Cir. 2015) (ruling that causation and redressability

requirements were not satisfied because the same allegedly injury-inflicting conduct by third

parties could occur even if challenged laws were invalidated); Delta Constr. Co., 783 F.3d at

1296-97 (ruling that plaintiff had not demonstrated redressability where plaintiff's injury would

occur even if the challenged regulations were vacated).  Because a favorable resolution of the

Plaintiff's claim will not likely redress the Plaintiff's claimed injury, the Plaintiff lacks standing

to maintain his claim against the Secretary of State.

> E.  The importance of having a uniform decision on Section Three
> disqualification demonstrates that the issue should not be separately litigated
> state-by-state in actions against state election officials:

29.     The Plaintiff asserts in his pleadings that he has standing to seek an order requiring the

Secretary of State to keep Mr. Trump's name off this State's presidential primary ballot based

on Mr. Trump's alleged disqualification under Section Three.  Accepting the Plaintiff's claim of

standing raises serious concerns regarding the potential impacts of separate state litigation

regarding a presidential candidate's alleged disqualification.  This concern is particularly acute

where the Plaintiff has filed at least 16 actions in federal district courts in different states.  See

ECF 10, at 4-5 n.5 (collecting Castro's cases in Arizona, Florida, Idaho, Kansas, Maine,

Montana, Nevada, New Hampshire, New Mexico, North Carolina, Oklahoma, Pennsylvania,

South Carolina, Utah, and West Virginia).

30.     The Plaintiff alleges that Mr. Trump is disqualified under Section Three because of his

actions on January 6, 2021.  ECF 1, ¶¶9-14.  Mr. Trump disputes that he is disqualified under

Section Three and notes that the Senate found him not guilty of the charge of incitement of

insurrection, and that no court or other adjudicatory body has convicted him of rebellion or

insurrection.  ECF 10, at 14.  Therefore, the Plaintiff is effectively asking this Court to make

findings of fact and issue rulings of law regarding whether Mr. Trump's alleged conduct

occurred and disqualifies him from holding the office of the president under Section Three, and

to order the Secretary of State to not place Mr. Trump's name on this State's presidential primary

ballot.

31.     If the Plaintiff has standing to litigate these factual and legal issues in separate actions

against each secretary of state, election board or commission, or political party that oversees

organizing presidential caucuses or presidential primary elections, there is a real risk of

conflicting adjudications of Section Three disqualification across all states.  If some states permit

a candidate's name to appear on a primary ballot and other states disqualify that candidate, this

may further result in voter confusion.

WHEREFORE, Defendants respectfully requests that this Honorable Court:

A.  Deny the Plaintiff's request for injunctive relief against the Secretary of State; and

Respectfully submitted,

Secretary of State David M. Scanlan

By his attorney,

THE OFFICE OF THE ATTORNEY GENERAL

Dated: September 29, 2023          /s/ Brendan A. O'Donnell
                                   Brendan A. ODonnell, Bar #268037
                                   Assistant Attorney General
                                   Election Law Unit
                                   New Hampshire Department of Justice
                                   33 Capitol Street
                                   Concord, N.H. 03301
                                   603-271-1269
                                   brendan.a.odonnell@doj.nh.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent by ECF on September 29, 2023, to all parties of record.

<u>/s/ Brendan A. O'Donnell</u>
Brendan A. O'Donnell
