**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

JOHN ANTHONY CASTRO,

Plaintiff,

v.                                                            No. 1:23-cv-00416-JL-TSM

SECRETARY OF STATE DAVID SCANLAN and
DONALD JOHN TRUMP,

Defendants.


**DEFENDANT'S RULE 12(B)(1) MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff's request for injunctive relief is meritless.  But before even considering the substance of Plaintiff's claims, the Court should dismiss them for lack of subject-matter jurisdiction.  President Trump has reviewed Secretary of State Scanlan's thoughtful and well-considered pleading demonstrating that Plaintiff lacks standing.  He will not repeat the Secretary's arguments, which he joins in, but rather writes separately to bring emphasis to other aspects of Plaintiff's lack of standing.

In addition to Plaintiff's lack of standing, this Court lacks subject-matter jurisdiction for two other reasons.  First, Plaintiff's claim presents a nonjusticiable political question.  As many courts have held, challenges to presidential qualifications are solely within the province of the Electoral College and Congress, not state elections officials or Article III courts.  Second, as Chief Justice Chase held just two years after its enactment, the disqualification provision of Section Three of the Fourteenth Amendment is not self-executing.  Because Congress has passed no law authorizing individuals such as Plaintiff to raise claims under that provision in federal court, this

Court lacks jurisdiction for that reason as well.  Accordingly, this Court should dismiss this case at the threshold.

## ARGUMENT

### I.        Legal Standards.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert the defense of lack of subject-matter jurisdiction via motion.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Peterson v. U.S.*, 774 F.Supp.2d 418, 420-21 (D.N.H. 2011) (citing *United States v. Coloian*, 480 F.3d 47, 50 (1st Cir. 2007).  "'It is to be presumed that a cause [of action] lies outside this limited jurisdiction,' and the burden lies with the plaintiff, as the party invoking the court's jurisdiction, to establish that it extends to his claims." *Id.* at 421 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

### II.       Article III courts lack power to decide the nonjusticiable political questions presented here.

Our Constitution commits to Congress and the Electoral College exclusive power to determine presidential qualifications and whether a candidate can serve as President.  Courts cannot decide the issue at the heart of this case.  Federal and state courts presented with similar cases challenging the qualifications of presidential candidates have uniformly held that they present nonjusticiable political questions reserved for those entities.  This Court should do likewise.

Political questions are nonjusticiable and are therefore not cases or controversies as defined by Article III. *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007). The Supreme Court set out broad categories that should be considered nonjusticiable political questions in *Baker v. Carr*, 369 U.S. 186, 217 (1962):

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] a lack of judicially discoverable and manageable standards for resolving it; [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [5] an unusual need for unquestioning adherence to a political decision already made; [and 6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Numerous courts have held that similar challenges to the qualifications of presidential candidates present nonjusticiable political questions. Surrounding the 2008 and 2012 General Elections, a spate of lawsuits was filed either asking state elections officials to ensure the qualifications of Barack Obama and/or John McCain or challenging their qualifications outright. The Third Circuit, in an order issued during one such challenge, stated that this was a political question not within the province of the judiciary. *See Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009) (noting "Berg's apparent lack of standing and also stating that Berg's lawsuit seemed to present a non-justiciable political question."). Multiple district courts have also ruled that lawsuits challenging presidential qualifications presented nonjusticiable political questions. For example, in *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008), a case brought before the 2008 election seeking to remove Senator McCain from the California ballot on grounds that he did not qualify as a "natural-born citizen" within the meaning of Article II of the Constitution, Judge Alsup explained why, even if the plaintiff's lack of standing could be cured, the case was due to be dismissed in its entirety:

It is clear that mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to any candidate to be ventilated when electoral votes are counted, and that the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates. Therefore, this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review—if any—should occur only after the electoral and Congressional processes have run their course.

*Id*. at 1147.

The scholarly opinion in *Grinols v. Electoral College*, No. 2:12–cv–02997–MCE–DAD, 2013 WL 2294885, at *5-7 (E.D. Cal. May 23, 2013) (stating "the Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States.  As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer"), is also highly instructive.  *Grinols* dismissed a challenge to President Obama's qualifications as a "natural-born citizen" after finding it presented a nonjusticiable political question and violated the separation of powers because the Constitution expressly entrusted the issue of presidential qualifications and removal from office to the legislative branch.[1]  Plaintiff will undoubtedly attempt to distinguish this opinion on grounds that it dealt with a plaintiff seeking removal of a sitting president from office, rather than a challenge

---

[1] So, too, did *Kerchner v. Obama*, 669 F. Supp. 2d 477, 483 n.5 (D.N.J. 2009) (rejecting challenge to President Obama's qualifications because, among other things, the claim was "barred under the 'political question doctrine' as a question demonstrably committed to a coordinate political department").  The court observed that "[t]he Constitution commits the selection of the President to the Electoral College in Article II, Section 1, as amended by the Twelfth Amendment and the Twentieth Amendment, Section 3" and that "[n]one of these provisions evince an intention for judicial reviewability of these political choices." *Id.*

to the election of a supposedly disqualified president.  But an earlier opinion in *Grinols* refused to grant a temporary restraining order to prevent President Obama's 2012 re-election on the same "birther" theory because "numerous articles and amendments of the Constitution together make clear that the issue of the President's qualifications and his removal from office are textually committed to the legislative branch, and not the Courts."  *Grinols v. Electoral Coll.*, No. 12-CV-02997-MCE-DAD, 2013 WL 211135, at *4 (E.D. Cal. Jan. 16, 2013).  As a result:

> These various articles and amendments of the Constitution make it clear that the Constitution assigns to Congress, and not the Courts, the responsibility of determining whether a person is qualified to serve as President. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer. If the Court were to answer that question, the Court would "[interfere] in a political matter that is principally within the dominion of another branch of government." This Court, or any other federal court, cannot reach a decision on the merits of a political question because doing so would ignore the Constitutional limits imposed on the courts. Accordingly, Plaintiffs ask the Court to answer a question the Constitution bars the Court from answering.

*Id.* (internal citation omitted).

Similarly, in *Taitz v. Democrat Party of Mississippi*, No. 3:12-CV-280-HTW-LRA, 2015 WL 11017373 (S.D. Miss. Mar. 31, 2015), another case that sought to have a candidate (President Obama) barred from the 2016 ballot based on the claim that he was not a "natural-born citizen," Judge Wingate's thorough opinion carefully analyzed the application of the political question and related separation of powers doctrines to such challenges.  *Id*. at *12-16.  Observing that the Twelfth and Twentieth Amendments charged the legislative branch with responsibility for the presidential electoral and qualification process ("These prerogatives are firmly committed to the legislative branch of our government"), *Taitz* held that "these matters are entrusted to the care of the United States Congress, not this court" and that the plaintiffs' disqualification claims were therefore nonjusticiable.  *Id.*

5

These "birther" cases are particularly telling inasmuch as Plaintiff expressly admitted—in a brief he filed in the Eleventh Circuit just a few days ago in support of an appeal from dismissal of another of his cases seeking the same relief sought here (albeit with respect to the Florida ballot)—that his lawsuits seeking President Trump's disqualification from the ballot under the 14th Amendment are "no different than asking the Court to determine who is a natural born citizen…." Appellant John Anthony Castro's Reply Brief, Case No. 23-12111 (11th Cir. Sept. 20, 2023) at p. 2.[2]

Multiple state courts have also held that secretaries of state had no such power to disqualify a presidential candidate from a ballot because of the doctrine of separation of powers.  For example, in *Strunk v. New York State Bd. Of Elections*, No. 6500/11, 2012 WL 1205117 (Sup. Ct. Kings County NY Apr. 11, 2012), the court found the Secretary of State did not have the authority to check qualifications because that authority presented a political question and a separation of powers issue.  The court stated:

> If a state court were to involve itself in the eligibility of a candidate to hold the office of President, a determination reserved for the Electoral College and Congress, it may involve itself in national political matters for which it is institutionally ill-suited and interfere with the constitutional authority of the Electoral College and Congress.

*Id*. at *12.  The California Court of Appeals' language in *Keyes v. Bowen*, 189 Cal.App.4th 647, 660 (2010), is also instructive:

> In any event, the truly absurd result would be to require each state's election official to investigate and determine whether the proffered candidate met eligibility criteria of the United States Constitution, giving each the power to override a party's selection of a presidential candidate.  The presidential nominating process is not subject to each of the 50 states' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results.  Were the courts of 50 states at liberty to issue injunctions restricting certification of duly-

---

[2] For the Court's convenience a copy of Plaintiff's Eleventh Circuit brief has been provided as Exh. 1.

elected presidential electors, the result could be conflicting rulings and delayed transition of power in derogation of statutory and constitutional deadlines. Any investigation of eligibility is best left to each party, which presumably will conduct the appropriate background check or risk that its nominee's election will be derailed by an objection in Congress, which is authorized to entertain and resolve the validity of objections following the submission of the electoral votes.

*Id.*; *accord, e.g., Jordan v. Secretary of State Sam Reed*, No. 12-2-01763-5, 2012 WL 4739216, at

*1 (Wash. Super. Aug. 29, 2012) (rejecting birther claims seeking to exclude President Obama

from the Washington ballot; "I conclude that this court lacks subject matter jurisdiction. The

primacy of congress to resolve issues of a candidate's qualifications to serve as president is

established in the U.S. Constitution….").

Thus, it is well-settled law that the Constitution vests responsibility for determining

whether a presidential candidate is qualified in the legislative branch—and only in the legislative

branch—and that the courts are barred from trenching on the legislature's exclusive territory. As

numerous courts have held, that alone is sufficient ground for concluding that challenges like this

one must be dismissed as barred under the political question doctrine and related concepts of

separation of power.

But in this case, there is a further reason for this Court to refrain from wading into this

dispute: President Trump was impeached by the United States House of Representatives, tried for

incitement of insurrection by the United States Senate, and found not guilty. *See* Impeaching

Donald John Trump, President of the United States, for high crimes and misdemeanors, H. 24,

117th Cong. (2021).[3] This further shows the potential for embarrassment of a coordinate branch

of government if a court were to seek to substitute its judgment on the issue for that of Congress.

---

[3] A true and correct copy of the Senate vote of Not Guilty can be found at
https://www.senate.gov/legislative/LIS/roll_call_votes/vote1171/vote_117_1_00059.htm (last visited on September 28, 2023).

If Congress wishes to revisit that issue following the election and make the political decision to override a decision by the American people to re-elect President Trump, then the Constitution prescribes a mechanism by which that momentous decision might be made.  But it is not a decision that is—or should be—committed to the jurisdiction of this Court.

**III.    Plaintiff also lacks standing because he cannot plausibly establish injury, causation or redressability.**

The Constitution limits the judicial power of the federal courts to actual cases and controversies." *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) (citing U.S. Const. Art. III, § 2, cl. 1). "A case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" *Id.*  (quoting *Baker,* 369 U.S. at 204).   "To satisfy the personal stake requirement, a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992));  *Ortiz v. Sig Sauer, Inc*., 448 F.Supp.3d 89, 95–96 (D.N.H. 2020) (Laplante, J.).

Concrete injuries must be "*de facto*; that is, [they] must actually exist." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016).  The injury does not have to be 'tangible' "like a picked pocket or a broken leg to be concrete." *Laufer v. Acheson Hotels, LLC,* 50 F.4th 259, 267 (1st Cir.2022) (citation omitted).  "Intangible injuries–like 'the suppression of free speech or religious exercise' or the invasion of common-law rights…can also be concrete." *Id.* at 331 (citing *Spokeo,* 578 U.S. at 340; *Valley Forge Christian College,* 454 U.S.464, 486 (1982)).  But in determining whether such an intangible harm rises to the level of a concrete injury, the Supreme Court has held that "both history" (particularly 'whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as provided a basis for a lawsuit in English of American

courts') and the 'judgment of Congress play important roles.'" *Id.* at 268 (quoting *Spokeo,* 578 U.S. at 340-41. "Congress," the Supreme Court has said, "is well positioned to identify intangible harms that meet minimum Article III requirements and may 'elevate' to the status of legally cognizable injuries that were previously inadequate in law." *Spokeo,* 578 U.S. at 341 (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-777 (2000)).

Plaintiff's allegation of an intangible injury fails to meet each of the injury, causation, and redressability triad factors. First, he fails to allege an injury that is sufficiently individual and particularized *to him* to confer standing. Plaintiff claims only to suffer a competitive harm because he must compete with President Trump. But he fails to plausibly allege that this injures him in any particularized or concrete fashion. He has not identified a single voter who identifies Castro as his or her "second choice" after Donald Trump. And he has proffered no expert or social science evidence that could support the inherently improbable claim that there is a latent Castro movement that would surface, if only Trump was not on the ballot. Ultimately, he alleges only the same, generalized injury as anyone else, and that is insufficient to confer standing.

Second, Plaintiff also fails to allege facts sufficient to establish that it is President Trump, as opposed to other factors, that are causing his asserted injury. Castro claims to be a candidate in the New Hampshire presidential preference primary. The purpose of the primary is to select the delegates and alternates "who shall represent the candidate as his or her delegation to the national convention." RSA 655:50. Plaintiff makes no claim–let alone a *plausible* claim–that preventing the secretary of state from including President Trump on the ballot materially reduces *his* chances of winning the primary and being awarded New Hampshire's delegates to the Republican National Convention. The truth is, of course, that no one has ever heard of Mr. Castro and, even if one were

to assume that President Trump was not on the ballot, there is absolutely no reason to suppose that any meaningful number of votes would go to him, as opposed to candidates who are actually recognized in the polls and on the streets.  Absent any such plausible factual allegation, he has not met his obligation to show a causal relationship between President Trump being on the ballot and his inevitable failure to win the New Hampshire primary.

Finally, any injury to the Plaintiff caused by the inclusion of President Trump on the ballot is not redressable by this Court.  The removal of President Trump from the New Hampshire ballot would not result in Mr. Castro winning even a single delegate in this State.  Certainly, he has not alleged—much less proven—any plausible mechanism by which it would.

Plaintiff's claim that he has "competitive injury" standing is misplaced.  Generally, cases finding competitive standing in the election law context have been brought by political parties seeking the exclude competing parties and candidates from the general election ballot.  *See*, *e.g., Texas Dem. Party v. Benkiser*, 459 F.3d 582, 586-87 n.4 (5th Cir.2006); *Schulz v. Williams,* 44 F.3d 48, 53 (2nd Cir.1994);  *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir.1990).  But Plaintiff has identified no instance in which competitive injury standing has been extended to a political party's primary election, where the question is not who will win a public office, but rather who will be that party's nominee.  Nor has he cited a case in which competitive standing was established in a contest to elect delegates to a national political convention.  And certainly, neither Congress nor common law or history support such a proposition.

Nor, in this instance, does common sense.  Even if Plaintiff's status as a putative "competitor" serves to distinguish him in some measure from those whose generalized claim to standing derives merely from their status as voters, it does not remedy the standing defects posed by the sheer implausibility—unleavened by any measure of reality—of Plaintiff's claims of injury,

causation, and redressability.  At some point, when a plaintiff claims that he has standing because, if only the Court would order his opponent to do X he would float into the sky, reality and common sense require there to be a better reason to believe that his feet will actually leave the ground than that the plaintiff merely says it is so.

For these reasons, this Court should rule that Plaintiff lacks standing.

## IV.     The Fourteenth Amendment is not self-executing when used offensively and requires enforcement mechanisms from Congress.

Even if Plaintiff did not lack standing and if this Court were not deterred by the political question doctrine, the case would still not be properly before it because Section Three of the Fourteenth Amendment is not self-executing and cannot be applied to support a cause of action seeking judicial relief absent Congressional enactment of a statute authorizing Plaintiff to bring such a claim in court.  A recent article by scholars Joshua Blackman and Seth Barrett Tillman summarizes the question of whether Section Three is self-executing as follows:

> In our American constitutional tradition there are two distinct senses of self-execution.  First, as a shield—or a defense.  And second, as a sword—or a theory of liability or cause of action supporting affirmative relief.  The former is customarily asserted as a defense in an action brought by others; the latter is asserted offensively by an applicant seeking affirmative relief.

> For example, when the government sues or prosecutes a person, the defendant can argue that the Constitution prohibits the government's action.  In other words, the Constitution is raised defensively.  In this first sense, the Constitution does not require any further legislation or action by Congress.  In these circumstances, the Constitution is, as Baude and Paulsen write, self-executing.

> In the second sense, the Constitution is used offensively–as a cause of action supporting affirmative relief.  For example, a person goes to court, and sues the government or its officers for damages in relation to a breach of contract or in response to a constitutional tort committed by government actors.  As a general matter, to sue the federal government or its officers, a private individual litigant must invoke a federal statutory cause of action.  It is not enough to merely allege some unconstitutional state action in the abstract.  Section 1983, including its statutory antecedents, *i.e.*, Second Enforcement Act a/k/a Ku Klux Klan Act of

1871, is the primary modern statute that private individuals use to vindicate constitutional rights when suing state government officers.

Constitutional provisions are not automatically self-executing when used offensively by an applicant seeking affirmative relief.  Nor is there any presumption that constitutional provisions are self-executing.

Blackman and Tillman, *Sweeping and Forcing the President Into Section 3: A Response to William Baude and Michael Stokes Paulsen*, last seen September 28, 2023, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4568771 (emphasis in original; internal footnote omitted).  Blackman and Tillman then thoroughly analyze whether Section Three is self-executing and explain at length why it is not.

Among the arguments they analyze is the historical treatment of the issue by, among others, Chief Justice Chase, and the Congress of 1870, just two years after the 1868 ratification of the Fourteenth Amendment.  One year after ratification, the Chief Justice of the Supreme Court of the United States, in a circuit court case, ruled that Section Three was not self-executing and that it could only be enforced through specific procedures prescribed by Congress or the United States Constitution.  *See In re Griffin*, 11 F.Cas. 7 (C.C.Va 1869).  Otherwise, if anyone had tried it at that time, it would have created an immediate and intractable national crisis.  There is no contemporaneous record of any outcry or protest about this holding.  Instead, Congress almost immediately provided the legislation suggested by the Chief Justice.

The text of Section Five of the Fourteenth Amendment specifically states that "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." In 1870, Congress exercised its Section Five power, passing a law, entitled the "Enforcement Act," which allowed federal district attorneys to enforce Section Three.  But the Enforcement Act did not give *state* election officials enforcement authority; it gave *federal* district attorneys that authority.  Section 3 of the Enforcement Act allowed U.S. district attorneys to seek writs of *quo*

*warranto* from federal courts to remove from office people who were disqualified by Section Three. Section 14 of the Enforcement Act required the courts to hear such proceedings before "all other cases on the docket." Section 15 provided for separate criminal trials of people who took office in violation of Section Three to take place in the federal courts. Federal prosecutors immediately started exercising *quo warranto* authority, bringing up on trial Jefferson Davis and others pursuant to that ability. These actions, however, waned after a few years. *See* Amnesty Act of 1872 (removing most disqualifications in the manner provided by Section Three; Pres. Grant Proclamation 208 (suspending *quo warranto* prosecutions)). The Amnesty Act of 1898 completely removed all Section Three disabilities incurred to that date.

In 1925, the Enforcement Act was repealed. In 2021, legislation was introduced to provide a cause of action to remove individuals from office who were engaged in insurrection or rebellion, but no further action was taken on that bill. *See* H.R. 1405, 117th Cong. 2021. Thus, there is presently no statute authorizing *any* person to bring actions seeking disqualifications under Section Three of the Fourteenth Amendment. Chief Justice Chase's order and the subsequent legislative history show that Section Three is not self-executing unless Congress takes action to make it so and that it does not give secretaries of state the authority to remove a presidential candidate from the ballot. Creating a 51-jurisdiction patchwork of state election laws and potentially conflicting orders and judgments to enforce Section Three would simply fly in the face of this precedent and constitutional tradition, causing the exact crisis Justice Chase feared.

## **CONCLUSION**

This Court lacks subject-matter jurisdiction over Plaintiff's claims. Those claims present a nonjusticiable political question reserved to the legislative branch and Congress has declined to create any sort of vehicle permitting any such claim to be brought by anyone in this or any other

court.  And Plaintiff further fails to meet his burden to adduce the evidence required to establish the ordinary standing requirements of injury, causation, and redressability.   This Court should dismiss the case without delay.

Respectfully submitted,
Donald J. Trump
By his attorneys,
Lehmann Major List, PLLC


September 29, 2023

*/s/ Richard J. Lehmann*
Richard J. Lehmann (Bar No. 9339)
6 Garvins Falls Road
Concord, N.H. 03301
(603) 731-6435
rick@nhlawyer.com


Dhillon Law Group, Inc.
David Warrington (Pro Hac Vice)
Jonathan Shaw (Pro Hac Vice)
2121 Eisenhower Ave., Ste. 608
Alexandria, VA 223141
(415) 433-1700
dwarrington@dhillonlaw.com
jshaw@dhillonlaw.com


Dhillon Law Group, Inc.
Mark P. Meuser (Pro Hac Vice)
177 Post Street, Ste. 700
San Francisco, CA 94108
(415) 433-1700
mmeuser@dhillonlaw.com


CERTIFICATION

I certify that a copy of this pleading was this day forwarded to all counsel and pro se parties of records.


September 29, 2023                    */s/ Richard J. Lehmann*


14