IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

JOHN ANTHONY CASTRO,

          Plaintiff,

v.

SECRETARY OF STATE DAVID SCANLAN and
DONALD JOHN TRUMP,

          Defendants.

No. 1:23-cv-00416-JL-TSM

**DEFENDANT TRUMP'S OPPOSITION TO PLAINTIFF'S "EMERGENCY" MOTION TO COMPEL HIM TO APPEAR AT THE OCTOBER 20, 2023, JURISDICTIONAL HEARING**

Plaintiff seeks extraordinary relief to which he is not entitled. He does so despite:

- Flouting this Court's rules requiring parties to meet and confer before filing motions;

- Not even *attempting* in his written submissions to justify the relief that he seeks with respect to President Trump;

- Being unable to articulate in post-filing discussion communications with counsel or in his pleadings *any* real need for President Trump to testify; and

- Not even attempting to follow FRCP 45 which sets forth the proper procedure for compelling the attendance of a witness at a hearing.

Essentially, Plaintiff's motion boils down to the assertion that he shouldn't be expected to comply with this Court's rules, carry his burden (or even explain his position) in his papers, or deal civilly and in good faith with his opponents or their counsel because he is (supposedly) a *pro se* litigant. But that has never been the rule in this Court—see LR 4.3(b) (Pro se "parties shall comply with these local rules…")—it is contrary to this Court's direct

1

statement to the Plaintiff in the preliminary conference between the parties in September, and it does not justify what Plaintiff seeks here.

## GENERAL BACKGROUND

Plaintiff John Anthony Castro is obsessed, an Ahab whose mission to harpoon Donald Trump authorizes him—in his mind—to do what he will, regardless of the rules and the rights of others. As the Attorney General of West Virginia wrote last week in urging a federal court to dismiss another of Mr. Castro's cookie cutter Fourteenth Amendment lawsuits:

> Plaintiff John Anthony Castro filed this lawsuit as part of a multi-state litigation effort that he dubs "Operation Deadlock." John Anthony Castro (@realJohnACastro), X (Sept. 20, 2023, 2:17 PM), https://bit.ly/48GyE9y. Castro's supposed operation involves filing suit after suit—roughly two dozen so far—seeking to disqualify President Donald Trump from running for election again. *See* ECF No. 37. Castro will then "sidelin[e] and neutraliz[e] the influence of conservative judges" by "nonsuit[ing] those cases" that are not assigned to "Obama-appointed or Clinton-appointed judges." Katherine Fung, *Donald Trump's Lawyers Get Stretched Even Thinner*, NEWSWEEK (Sept. 19, 2023, 11:22 AM), https://bit.ly/3S2a25B; *see, e.g.*, Notice of Dismissal, *Castro v. Henderson*, No. 2:23-cv-00617 (D. Utah Sept. 27, 2023), ECF No. 14 (Castro dismissing his suit after it was reassigned to a judge appointed by President Trump); *but see, e.g.*, *In re Fieger*, No. 97-1359, 1999 WL 717991 (6th Cir. Sept. 10, 1999) (affirming sanctions against attorney who had "dismissed [his] cases so that he could select the judge"). Castro evidently hopes these efforts will "completely bankrupt [President Trump] by next summer." John Anthony Castro (@realJohnACastro), X (Sept. 27, 2023, 8:40 PM), https://bit.ly/45gxpLq.

*Castro v. Warner*, Case No. 2:23-cv-00598 (S.D.W. Va. Oct. 12, 2023), ECF 44 at p. 4 of 24. Mr. Castro's willingness to abuse the judicial system is matched by his willingness to heap abuse and vituperation on other parties, their counsel, and even the courts themselves when they have the temerity to disagree with him. Two days ago, the Attorney General of West Virginia again felt obliged to note Mr. Castro's abusive behavior, this time objecting to his attacks on the Magistrate Judge and other court personnel as well as on litigants:

2

> Unfortunately, Castro's "objection" seems to be little more than a vehicle through which to attack the magistrate judge. See ECF No. 48, at 1 (criticizing "the U.S. Magistrate Judge's halfwitted actions and inactions"). Castro filed similar attacks against court personnel earlier in the case.[1] See, e.g., ECF No. 15 at 2 (arguing that the "U.S. Magistrate's use of the 'obvious' standard completely [sic] devoid of supporting legal authority reveals this ruling for what it is"); ECF No. 31, at 2 (issuing a "demand[]" that "this Court have a discussion with the staff of the Clerk's Office to take their work more seriously"). Indeed, Castro's most recent filing even attacks the district court for being "hostile" and "show[ing] zero regard for civilized procedure." ECF No. 48, at 2.
>
> [1] Castro has also lodged personal attacks against parties. *See, e.g.*, ECF No. 48, at 1 (saying that a filing was a "bizarre request" with "the legal sophistication of a first-year law student at best"). And he has attacked court personnel in his related suits. *See, e.g.*, Mot. at 1-2, *Castro v. Oliver*, No. 1:23-cv-00766 (D.N.M. Sept. 29, 2023), ECF No. 12 ("[I]t is not the job of Plaintiff to conduct a continuing education course for the U.S. Magistrate. … It is the job of the U.S. Magistrate to either research the law or recuse himself for being intellectually deficient.").

*Castro v. Warner*, Case No. 2:23-cv-00598 (S.D.W. Va. Oct. 12, 2023), ECF 51 at p. 3 of 4.

It is worth noting that, although in the context of his crusade Mr. Castro seeks to portray himself as a *pro se* plaintiff entitled to special solicitude, *see, e.g.,* ECF 46.1 ("After carefully considering the liberally construed *pro se* motion…"), in his day-to-day life he depicts himself rather differently—as a practicing lawyer who holds two law degrees and heads an international tax firm. See https://www.castroandco.com/staff-profiles/john-anthony-castro-j-d-ll-m/ ("John Anthony Castro is the managing partner of Castro & Co. Dr. Castro earned his Master of Laws (LL.M.) in International Taxation from Georgetown University Law Center in Washington, DC. Dr. Castro also earned a Doctor of Jurisprudence (J.D.) from UNM School of Law.… Dr. Castro is listed on each and every return submitted by Castro & Co. and AiTax as a Third-Party Designee, which authorizes him to practice federal tax law in all 50 states as well as the 68 countries with which the U.S. has income and estate tax treaties.…")). Lest there be any misunderstanding, the

3

undersigned counsel do not vouch for Mr. Castro's status as a lawyer—he does not appear ever to have been admitted to any state bar—but that is how he holds himself out to the public and he should not be allowed to wear one costume in public and a different one when he thinks it advantages him here.

## BACKGROUND TO THIS MOTION

The entire history of this issue, insofar as it involves Donald Trump, is in writing and submitted for the Court's review. *See* Exhibit A, hereto, which is an email chain involving Mr. Castro and counsel for the defendants. As this email chain shows, Mr. Castro first listed the three witnesses that he seeks to compel to appear by this motion—the Secretary of State, the Attorney General, and President Trump—in the witness list that he filed approximately two hours after the Court entered its October 5, 2023, Procedural Order (ECF 36) setting the upcoming hearing on jurisdictional issues. That Order expressly stated that "[t]he plaintiff bears the burden to establish standing as to each defendant (the New Hampshire Secretary of State and Donald J. Trump) separately and that his case presents a justiciable question within the court's jurisdiction." ECF 36 at p. 2.

The next day, counsel for the Secretary of State asked Mr. Castro to explain what facts he sought to elicit, suggesting that it might be possible to work out a stipulation. Exh. A. With respect to President Trump, the substance of Mr. Castro's response was:

> I intend to establish that Donald John Trump intends to file his Declaration of Candidacy and pay the $1,000 filing fee either in-person or by mail postmarked between October 11 – 27 as required by state law.

*Id.* Significantly, in the portion of that October 6 email discussing what he sought from the Attorney General and the Secretary of State, Mr. Castro acknowledged that he fully understood the relevant procedure applicable to both parties and non-parties: "Because I

4

doubt the state will stipulate to that fact, I suspect I will be compelled to still call him as a witness pursuant to Fed. R. Civ. P. 45(c)(1)(A)." *Id.*  He wrote that twice.  *Id.*

There was no further communication between Mr. Castro and counsel for Mr. Trump regarding his desire to have Mr. Trump appear to testify about the single, undisputed fact that he stated was the sole reason for his wanting to call Mr. Trump as a witness.  He made no request that Mr. Trump make himself voluntarily available, he never asked if counsel would accept service of a subpoena, nor is there any evidence that he attempted to serve—much less succeeded in serving—a subpoena on Mr. Trump.  Nor did he ever ask Mr. Trump to stipulate to that fact.  Had Mr. Castro done any of those things, counsel would have told him that Mr. Trump would stipulate to that fact (as, in fact, Exhibit A shows that he did as soon as Plaintiff filed this motion).

But Plaintiff never raised the issue and the subject was never mentioned again until his "emergency" motion appeared out of the blue at 6:15 p.m. on Monday, October 16, 2023.  The undersigned counsel emailed him approximately an hour later, writing:

> I was surprised that you filed a motion to compel my client to appear at the hearing without first conferring with me, as required by the Local Rules.  LR 7(c) ("Any party filing a motion other than a dispositive motion shall certify to the court that a good faith effort has been made to obtain concurrence in the relief sought."); LR 4.3(b) (Pro se "parties shall comply with these local rules…").
>
> Your motion does not explain why you contend that my client should be required to attend the hearing, but rather discusses only your reasons for wanting the Secretary of State and the Attorney General to appear.  While I do not agree that your motion establishes a need for either of those gentlemen to appear, I will leave it to their counsel to deal with that aspect of your motion.
>
> The only previous explanation of the testimony you hoped to elicit from my client is set forth in your October 6 email to Mr. O'Donnell, to which this email is a reply.  Specifically, you wrote: "Donald John Trump.  I intend to establish that Donald John Trump intends to file his Declaration of

5

> Candidacy and pay the $1,000 filing fee either in-person or by mail postmarked between October 11 – 27 as required by state law." My client will stipulate that he will file his Declaration of Candidacy and pay the $1,000 filing fee by October 27, 2023. Accordingly, at least with respect to my client, your motion is moot. Please confirm that you will withdraw your motion with respect to my client.

Exh. A. He responded: "Noted. I was unaware of the local rules and will confer on future motions. I will amend the Motion to remove any reference to your client once we submit a join stipulation of facts, which I'm sure we can do by tomorrow." *Id.* The next morning, the undersigned counsel responded, attaching the agreed stipulation: "Here is a draft stipulation as discussed below. Please confirm that this is acceptable to you and that, upon execution, you will withdraw your motion as to my client." *Id.* That evening, Mr. Castro responded, attaching the signed stipulation: "Upon execution, I will withdraw the motion as to Defendant Donald John Trump." *Id.* Three minutes later, the undersigned counsel responded "Unfortunately, I am not in a position to print and sign at the moment, will do so when I can." *Id.*

Mr. Castro then apparently had second thoughts, deciding to attempt to use this issue to coerce counsel into agreeing to accept his views on the scope of Friday's hearing:[1]

---

[1] Within moments, those views were also set forth in ECF 48, which Mr. Castro titled a Notice of Full Briefing and Closure of Deadline for Defendant Secretary of State to Motion [*sic.*] to Dismiss. Lest there be any doubt, President Trump disagrees with virtually everything Mr. Castro said in that document. The scope of Friday's hearing is as set forth in the Court's Order, ECF 36, no matter what Mr. Castro would prefer it to be. And, of course, whatever Mr. Castro's preferences on the subject, "Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.' *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010); *see also Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 16 (1st Cir. 2018) ('[F]ederal subject-matter jurisdiction can never be presumed, nor can it be conferred by acquiescence or consent.') Therefore, we must 'raise and decide jurisdictional questions that the parties either overlook or elect not to press.' *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011)." *Industria Lechera De Puerto Rico, Inc. v. Beiro*, 989 F.3d 116, 120 (1st Cir. 2021).

> Perfect, I need to add that my agreement is also conditioned on you and your client agreeing that, other than the Political Queston Doctrine, there are no other grounds for claiming the Court lacks jurisdiction to hear the case.
>
> I understand you have addressed the self-executing nature of Section 3 of the 14th Amendment, but that goes to whether a claim upon which relief can be granted has been asserted.
>
> Please confirm there are no other grounds, other than the Political Question Doctrine cited in your client's Motion to Dismiss, that you intend to raise. The reason is quite evident: if you raise new grounds, I may need your client available to provide testimony. If you can also confirm there are no other grounds, we can proceed. If not, please consider the PDF I sent to be null and void.

Exh. A. The undersigned counsel declined to agree, both because the Court has clearly stated the issues to be addressed at the October 20, 2023, hearing, and because it was completely improper for the Plaintiff to attempt to coerce Defendant Trump into waiving defenses (that are not, in any event waivable), by reneging on an agreement. *Id.*

## ARGUMENT

### I. Plaintiff's motion should be denied because he has failed to comply with the applicable rules.

As a threshold matter, Plaintiff's motion should be denied because he has failed to comply with both this Court's Local Rules and the Federal Rules of Civil Procedure. This Court's Local Rule 7.1(c) requires that "Any party filing a motion other than a dispositive motion shall certify to the court that a good faith attempt has been made to obtain concurrence." Here, Mr. Castro made no effort to seek concurrence before filing his motion, which is sufficient reason for denying his motion. *See, e.g., In re Tyco Int'l Ltd. Sec. Litig.,* No. 00-MD-1335-B, 2001 WL 34075721, at *1 (D.N.H. Jan. 30, 2001) (denying motion due to failure to certify concurrence "as a sanction under LR 1.3(a)"). So, too, is

Mr. Castro's abuse of this Court's procedures for seeking expedited treatment under Local Rule 7.1(f). Mr. Castro nowhere shows good cause for this supposed "emergency"; he just proclaims it. Yet if he was serious about getting these witnesses, his email of October 6 shows that he knew perfectly well how to try to do so then. The "emergency" after ten days of inaction on his part is entirely a creature of Mr. Castro's own making.

More substantively, as Mr. Castro's October 6 email twice acknowledged, Rule 45 provides the proper vehicle for compelling attendance at a hearing. Yet despite knowing that at least 10 days before filing his surprise motion, he does not claim to have sought or served a subpoena on Mr. Trump. There is simply no reason for this Court to create a special rule for Mr. Castro just because he can't be bothered to follow rules that he has admitted he knows apply.

## II. Plaintiff's motion should be denied because he has shown absolutely no basis for compelling President Trump to appear in his opening brief.

Plaintiff's Motion explains *why* he wants the Secretary of State and the Attorney General to appear at the hearing. (His rationale for asserting a need for their appearances makes no sense whatsoever, resting as it does on a complete misunderstanding of the political question doctrine argument advanced by President Trump,[2] but at least he has made some effort to spell it out.) By contrast, the Motion contains no explanation why President Trump should be required to attend. Not a single word. None. That would not suffice as the opposition to a motion to quash a validly served subpoena. But where, as

---

[2] President Trump contends that—as many courts have held—the Constitution vests exclusive responsibility for resolving disputes regarding presidential qualifications in the United States Congress, that is the *Legislative Branch* of the *federal* government. Thus, the position of the Secretary of State and the Attorney General that members of the *Executive Branch* of the New Hampshire *state* government lack power to decide those questions supports President Trump's position.

8

here, plaintiff seeks the extraordinary remedy of skipping over the subpoena process and haling the leading contender for the Republican presidential nomination into court at the eleventh hour he should be required to make a very compelling showing of need.  Yet he has made no showing whatsoever.

Plaintiff's utter failure to brief the issue of requiring President Trump's appearance has waived it.  "[I]t is well established in the First Circuit that failure to brief an issue waives the issue." *Sirikanjanachai*, No. BAP MB 20-003, 2020 WL 7647510, at *5 (B.A.P. 1st Cir. Dec. 21, 2020) (holding that pro se litigant waived issue by failing to meaningfully brief it), citing *United States v. Bayard*, 642 F.3d 59, 63 (1st Cir. 2011); *accord, e.g., Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 36 (1st Cir. 1994) ("issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived….Parties must spell out their arguments squarely and distinctly or 'forever hold their peace'").  This rule applies in district courts just as much as on appeal.  *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed…."); *Ortiz v. Sig Sauer, Inc.*, 596 F. Supp. 3d 339, 351 (D.N.H. 2022) (LaPlante, J.) ("even if the exceptions were recognized, Ortiz's arguments regarding their applicability are too cursory to be considered."); *Ortiz v. Sig Sauer, Inc.*, No. 19-CV-1025-JL, 2023 WL 1928094, at *2 (D.N.H. Feb. 10, 2023) (LaPlante, J.) ("The court does not delve into the merits of certifying under Rule 23(b)(2), as Ortiz's argument is wholly undeveloped."), citing *Higgins, supra.*

Castro's brief does not even take a stab at an argument regarding President Trump.  And having failed to brief the issue in his opening brief, he cannot remedy that failure on reply.  *See Frangos v. Bank of New York Mellon as Tr. for Certificateholders of CWABS, Inc.*, No.

18-CV-112-JL, 2019 WL 192624, at *2 (D.N.H. Jan. 15, 2019) (LaPlante, J.) ("issues not raised in an opening brief are waived"), *aff'd sub nom. In re Frangos*, No. 19-1200, 2021 WL 9525509 (1st Cir. Aug. 11, 2021).

Waiver aside, Castro could not plausibly have made the case that President Trump's testimony was required. As the parties' correspondence reveals, the *only* thing that Castro has ever stated he wanted President Trump to testify to—that he will file a timely Declaration of Candidacy and pay the fee—is uncontested. That Plaintiff apparently thinks he might regret not having President Trump available just in case would not come close to a showing of good cause—even if it had been made in the motion, which it wasn't.

The simple fact is that the jurisdictional issues to be heard on Friday are not issues as to which President Trump has any relevant knowledge. Plaintiff has not identified—and frankly the undersigned counsel can't think of—any disputed issue with respect to which President Trump could offer meaningful testimony. Not the political question doctrine. Not ripeness. Not plaintiff's own standing. Not the non-self-executing nature of Section Three of the Fourteenth Amendment. Nor any other issue that might reasonably be expected to come up on Friday.

## CONCLUSION

*Pro se* or not, generously construed filing or not, the simple fact is that Castro has not come close—has not even tried—to justify his last-minute demand that President Trump be required to attend Friday's hearing to offer unspecified testimony irrelevant to the jurisdictional issues before the Court. The Court should deny his motion.

                                                                                          Respectfully Submitted
                                                                                          Donald J. Trump

|  |  |
|---|---|
|  | By his attorneys,<br>Lehmann Major List, PLLC |
| October 18, 2023 | */s/* Jonathan M. Shaw<br>_____<br>Jonathan M. Shaw (*pro hac vice*)<br>Dhillon Law Group<br>2121 Eisenhower Avenue, Suite 608<br>Alexandria, VA 22314<br>(415) 520-6593<br>JShaw@dhillonlaw.com<br><br>Richard J. Lehmann (Bar No. 9339)<br>6 Garvins Falls Road<br>Concord, N.H. 03301<br>(603) 731-5435<br>rick@nhlawyer.com<br><br>Mark P. Meuser (*pro hac vice*)<br>Dhillon Law Group<br>177 Post Street, Suite 700<br>San Francisco, CA 94108<br>(415) 520-6593<br>MMeuser@dhillonlaw.com |

## **CERTIFICATION**

I hereby certify that a copy of this pleading was this day forwarded to all counsel of record via the court's electronic service system.

|  |  |
|---|---|
| October 18, 2023 | */s/* Jonathan M. Shaw<br>_____<br>Jonathan M. Shaw |